## No. 17,657.

HIGHLAND CHIEF, INC., ET AL. *v.* LACY L. WILKINSON, ET AL.

(288 P. [2d] 198)

Decided September 6, 1955.   Rehearing denied October 17, 1955.

Messrs. ROTHGERBER, APPEL & POWERS, Mr. WILLIAM E. DOYLE, for plaintiffs in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy Attorney General, Mr. ROBERT CARR, Assistant Attorney General, for defendant in error Lacy L. Wilkinson.

Mr. FRED  M. WINNER, Mr. WILLIAM G. BERGE, Mr. MARSHALL QUIAT, for defendant in error F. W. Dodge Corporation.

282

*En Banc.*

Mr. Justice Holland delivered the opinion of the Court.

The State Purchasing Agent, under statutory authority and direction, on April 1, 1954, awarded a contract for state advertising in daily newspapers to the DAILY JOURNAL. The pertinent statutes are C.R.S. '53, 109-1-2 and 109-1-3, and are as follows:

"109-1-2. Legal publications.—Every newspaper printed and published daily, or daily except Sundays and legal holidays, or which shall be printed and published on each of any five days in every week excepting legal holidays and including or excluding Sundays, shall be considered and held to be a daily newspaper; every newspaper printed and published at regular intervals three times each week shall be considered and held to be a triweekly newspaper; every newspaper printed and published at regular intervals twice each week shall be considered and held to be a semiweekly newspaper; and every newspaper printed and published at regular intervals once each week shall be considered and held to be a weekly newspaper. No publication, no matter how frequently published, shall be considered a legal publication until and unless such publication shall have been admitted to the United States mails as second class matter under the provisions of the act of March 3, 1879, or any amendments thereof."

"109-1-3. Requisites of legal newspaper.—Any and every legal notice or advertisement shall be published only in a daily, a triweekly, a semiweekly, or a weekly newspaper of general circulation and printed and published in whole or in part in the county in which such notice or advertisement is required to be published, except as herein provided; which said newspaper, if published triweekly, semiweekly, or weekly, shall have been so published in such county, except as herein provided,

continuously and uninterruptedly, during the period of at least fifty-two consecutive weeks next prior to the first issue thereof containing any such notice or advertisement; and which said newspaper, if published daily, shall have been so published in such county, uninterruptedly and continuously, during the period of at least six months next prior to the first issue thereof containing any such notice or advertisement. The mere change in the name of any newspaper, or the removal of the principal business office or seat of publication of any newspaper from one place to another in the same county shall not break or affect the continuity in the publication of any such newspaper if the same is in fact continuously and uninterruptedly printed and published within such county. A newspaper shall not lose its rights as a legal publication if it should fail to publish one or more of its issues by reason of a strike, transportation embargo or tie-up, or other casualty beyond the control of the publishers. Any legal notice which fails of publication for the required number of insertions by reason of a strike shall not be declared illegal, if publication has been made in one issue of said publication. If in any county in this state there shall not have been published therein any newspaper for the prescribed period at the time when any such notice or advertisement is required to be published, or there shall not be published therein any newspaper, then such notice or advertisement may be published in any newspaper printed in whole or in part in an adjoining county and having a general circulation in whole or in part in said county having no newspaper published therein."

On May 17, 1954, plaintiffs in error as owners and publishers of a newspaper named the DAILY CHIEF, alleged to be a newspaper of general circulation, printed and published in the City and County of Denver, filed a complaint in the district court seeking injunctive relief; also relief in the nature of mandamus; and for restitution and damages against the Governor of the State of

Colorado, Secretary of State, the State Treasurer, the State Purchasing Agent, and F. W. Dodge Corporation, a New York corporation. On timely motion, the action was dismissed against the governor, secretary of state and the state treasurer. The prayer of the complaint was to the effect that the contract of the Dodge corporation, as owner of the DAILY JOURNAL be set aside and awarded to plaintiff, the DAILY CHIEF. The trial court dismissed the action, holding that the DAILY CHIEF was not a qualified "daily" as defined by the above quoted statute.

The contract here attacked was made April 1, 1954, and has been fully performed; there is nothing upon which an injunctive decree could operate, and nothing could be accomplished thereby. Any decision now rendered could have no effect on the controversy represented in this record, which depended upon the factual situation existing at the time the judgment of the trial court was entered. Although the case is now moot, we indulge a few observations concerning the law and the facts as presented.

From our reading of the statutes involved, we find them clear and unambiguous, and in such cases, courts must enforce the statutes as written.

Acting under the pertinent statute, the state purchasing agent at the time of awarding the contract, determined that the DAILY CHIEF did not qualify under the statute for the reason that it admittedly missed one publicaion on Tuesday, June 1, 1954, failing thereby to have been published "uninterruptedly and continuously" for at least six months "next prior to the first issue thereof containing any such notice or advertisement." The statute is plain in enumerating the exceptions from "continuous and uninterrupted publication," and as is to be noted, it states a newspaper shall not lose its rights as a legal publication if it should fail to publish one or more of its issues by reason of a strike, transportation embargo or tie-up, or other casualty beyond the

control of the publishers. The record discloses that the failure to publish the paper on the day mentioned was due to a refusal to pay employees overtime for work on the previous day, it being a holiday. This falls in the class of a casualty which is within the control of the publisher and, under the statute, its right as a legal publication·was lost. By failure to publish one of its issues, the newspaper fell short of the statutory requirement and the forfeiture was automatic.

Plaintiff contends that the Legislature did not mean what it said or expressed in the statute. This situation did not work a forfeiture, because a paper can requalify by publishing its issues uninterruptedly and continuously for the ensuing six months and thereby re-establish itself as a legal publication. Plaintiff's failure in this instance was purely a matter of convenience to it and it is not now in a position to ask this court to disregard the clear and express language of the statute in an attempt to excuse its voluntary failure to comply with the requirements.

Since the facts are undisputed, resolution of this controversy is made less troublesome. In face of the undisputed fact that plaintiff did not publish "uninterruptedly and continuously during the period of at least six months next prior to the issue thereof containing any such notice or advertisement," it cannot expect a violation of the statutory requirements by the purchasing agent, much less that this court would fail to uphold the action of the contracting agent, who was following the letter of the law.

These observations are submitted with the hope that they will be helpful in such future matters, and we freely say that since the contract here in question, sought to be enjoined, has been fully performed, the question becomes purely academic.

For the reasons indicated, the writ of error is dismissed.